NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12088


COMMONWEALTH  vs.  HERICO ANDRADE.


Plymouth.     October 5, 2018. - December 21, 2018.

Present:  Gants, C.J., Lowy, Budd, & Cypher, JJ.


Homicide.  Evidence, Testimony before grand jury, Prior
    inconsistent statement.  Practice, Criminal, Instructions
    to jury, Capital case.



Indictments found and returned in the Superior Court
Department on July 1, 2011.

The cases were tried before Richard J. Chin, J.


James W. Rosseel for the defendant.
Laurie Yeshulas, Assistant District Attorney, for the
Commonwealth.


BUDD, J.  In June 2015, a jury convicted the defendant,

Herico Andrade, of murder in the first degree on a theory of

deliberate premeditation, in connection with the shooting death

of Jose Lobo in April 2011.[1]  In this direct appeal, the

_____

[1] The defendant was also convicted of unlawful possession of
a firearm.

defendant asserts error in the method the prosecutor used to offer grand jury testimony as prior inconsistent statements, and in supplemental instructions that the judge provided to the jury. He also seeks relief under G. L. c. 278, § 33E. For the reasons that follow, we affirm the judgments and decline to grant extraordinary relief under § 33E.

Background. We summarize the facts as the jury could have found them, reserving certain details for discussion below. On April 4, 2011, a sport utility vehicle (SUV) stopped outside a house in Brockton where several people were congregated. The men in the SUV, including the defendant, stopped to speak to some young women who were present. Shortly thereafter, one of the men standing outside approached the vehicle and argued with the defendant. The defendant said, "I'll go and come back," before the SUV pulled away. Approximately thirty-three minutes later, shots were fired in the vicinity of the area where the people had been gathered. When police arrived, they found the victim lying on the front porch of the home with a gunshot wound to his temple. He later was pronounced dead at a hospital.

A surveillance video recording captured two individuals approaching the scene on foot and reaching for their waistbands around the time of the shooting. The figures reappeared in the video recording fleeing the scene moments later. One witness, Antonio Silva, saw two individuals running away. Silva

identified one of the individuals as the defendant and observed that the defendant held a revolver while running from the scene. A baseball hat containing the defendant's deoxyribonucleic acid (DNA) was recovered from the street in front of the porch where the victim was killed. Days after the murder, the defendant was interviewed by the Brockton police. During that interview, the defendant admitted to being a passenger in the SUV that stopped near the congregated group on the night of the shooting, but denied being present at the time of the shooting. Approximately one and one-half weeks later, the defendant left the country. He was indicted for murder, and he was arrested upon his return nearly one year later.

Discussion. The defendant argues that the prosecutor's method of presenting grand jury testimony was flawed. The defendant claims that, as a result, the judge improperly allowed the jury to consider the testimony as substantive evidence, and that the judge erred in considering the evidence himself in ruling on the defendant's motion for a required finding of not guilty. The defendant also contends that erroneous jury instructions entitle him to a reversal of his convictions.

1. Presentation of grand jury testimony. Four percipient trial witnesses called by the Commonwealth claimed that they could not recall the testimony they had given to the grand jury, the events and facts underlying those prior statements, or both.

Three of the four witnesses were found by the judge to be feigning memory loss, and the Commonwealth was permitted to present their grand jury testimony as prior inconsistent statements admissible as substantive evidence. See Commonwealth v. Neves, 474 Mass. 355, 366-367 (2016); Mass. G. Evid. § 801(d)(1)(A) (2018).

For each witness, rather than reading the relevant portions of the grand jury transcripts directly into the record (with or without the assistance of co-counsel), the prosecutor chose to read relevant excerpts from the transcripts, punctuated by questions to the witness as to whether he or she recalled giving the grand jury testimony. At the close of evidence, the defendant's attorney moved for a required finding of not guilty, arguing that because the prosecutor had presented the grand jury testimony in a question and answer format, the testimony was part of the prosecutor's leading questions to the witnesses, and therefore the testimony could not be considered for substantive purposes. See Commonwealth v. Judge, 420 Mass. 433, 452 n.12 (1995). The defendant claimed that without the evidence from the three percipient witnesses, there was insufficient evidence to find him guilty.

The judge considered the matter and ultimately denied the defendant's motion for a required finding of not guilty. He ruled that the method the prosecutor had used was "sufficient"

to have the jury consider the prior testimony substantively.  In his jury charge, the judge instructed that questions put to witnesses were not themselves evidence, but that the grand jury testimony could be considered for its substantive value.

On appeal, the defendant claims, among other things, that the judge erred in considering the grand jury testimony as substantive evidence when he ruled on the defendant's motion for a required finding of not guilty and in instructing the jury to do the same.  As the defendant did not object to the admission of the grand jury testimony for substantive purposes when it was read by the prosecutor in posing his questions, and waited to object until after the close of evidence, we review any error for a substantial likelihood of a miscarriage of justice.[2]  See Commonwealth v. Comtois, 399 Mass. 668, 674 (1987), quoting Commonwealth v. Gallison, 383 Mass. 659, 669 (1981) ("It is a fundamental principle of appellate review that a prompt objection at trial is a prerequisite to the presentation of an

---

[2] Because the trial judge had allowed the prosecutor to present the testimony for substantive purposes, there was no question that the prosecutor was offering the grand jury testimony for its substantive value during the direct examination of the witnesses who were found to have feigned memory loss.  Prompt objections by parties allow judges to cure any defects in the proceedings when they occur.  See Commonwealth v. Fowler, 431 Mass. 30, 36 (2000), citing Commonwealth v. Sherick, 401 Mass. 302, 305 (1987).  To preserve the issue, it was thus incumbent upon defense counsel to object in the moment, rather than to wait until the close of evidence.

issue for appellate review").  See also Commonwealth v. Silvia,
343 Mass. 130, 135-136 (1961).  We conclude that, although the
method the Commonwealth used to introduce the evidence was
somewhat unusual, the testimony was properly admitted for
substantive purposes.  There was no error.

The judge properly found that the witnesses in question
were feigning memory loss, which entitled the Commonwealth to
have the testimony admitted for substantive purposes.[3]  See
Commonwealth v. Sineiro, 432 Mass. 735, 742-743 (2000) ("when a
witness does not deny his probable cause testimony, nor its
truth, but chooses to feign an inability to recall the testimony
in an attempt to avoid giving evidence that might send another
to jail, a judge should not be without recourse").  The
defendant does not dispute the judge's decision to allow the
grand jury testimony in evidence substantively; instead, he
claims that the prosecutor's method of presenting that evidence
was flawed and that as a result the testimony should not have
been considered for its truth.

We have held that when a witness feigns memory loss, that
witness's grand jury testimony may be admitted substantively as
a prior inconsistent statement if certain requirements are met:

---

[3] Finding that a witness is feigning memory loss is within
the sound discretion of a trial judge.  See Commonwealth v.
McGhee, 472 Mass. 405, 422-423 (2015).

(1) the prior statement must clearly be that of the witness rather than the questioner; (2) the statement must be free from coercion; (3) the defendant must have an opportunity for effective cross-examination of the witness at trial, and (4) some corroborative evidence must be presented when the prior testimony concerns an essential element of the crime.  See Sineiro, 432 Mass. at 743-744, citing Commonwealth v. Noble, 417 Mass. 341, 345 (1994), and Commonwealth v. Daye, 393 Mass. 55, 74 (1984).  See also Mass. G. Evid. § 801(d)(1)(A).  Here, each of the requirements was met.

For each witness, the prosecutor indicated that the prior testimony had been before a grand jury, and each witness confirmed that his or her testimony had not been coerced. Further, as the prosecutor read the prior testimony of each witness, he took care to identify which portions of the excerpts were questions and which were the witness's responses.

The defendant claims that the witnesses' claimed loss of memory made it impossible for defense counsel to effectively cross-examine them.  This claim lacks merit.  We have held that "any limitation on the effectiveness" of a cross-examination of a witness who has been found to have feigned memory loss "generally does not implicate the confrontation clause." Commonwealth v. DePina, 476 Mass. 614, 622 (2017).

Finally, the defendant contends that there was no corroborating evidence for the witnesses' grand jury testimony, and that therefore it should not have been used substantively. See Sineiro, 432 Mass. at 741 (corroboration required for grand jury testimony relating to essential element of crime); Noble, 417 Mass. at 345 (same). We disagree. Silva, one of the trial witnesses found to have feigned memory loss, testified in the grand jury that, moments after the shooting, he observed the defendant running from the scene with a revolver in his hand. This testimony was corroborated by surveillance video footage of the crime scene that showed two figures reaching for their waistbands as they approached the location of the shooting, and then running away soon thereafter.

In addition, a baseball hat was located in the street in front of the house where the victim was shot. The hat, which was not in the street prior to the shooting, was analyzed for the presence of DNA. The major DNA profile obtained from the hat was consistent with the DNA profile of the defendant. In short, there was ample corroboration of Silva's prior testimony.[4]

---

[4] The grand jury testimony of the other two witnesses who were found to have feigned memory loss concerned the defendant's initial arrival as a passenger in the sport utility vehicle. Although the testimony did not concern an essential element of the crime (and therefore did not require corroboration as did Silva's testimony), the defendant himself corroborated the two witnesses' testimony in his statement to police.

See <u>Noble</u>, 417 Mass. at 346 (corroboration can be drawn from reasonable inferences).

It would have been apparent to the jurors at the time, as it is apparent to us now, that the prosecutor was reading relevant excerpts from grand jury testimony into the record, and occasionally asking each witness whether he or she recalled the testimony.  Thus, although the prosecutor's method was unconventional, the judge did not err in allowing the jury to consider the grand jury testimony as substantive evidence, nor did he err in considering it himself in ruling on the defendant's motion for a required finding of not guilty.  Nonetheless, to avoid confusion when offering grand jury testimony in evidence, we suggest that it be read directly into the record either by one person reading the questions and a colleague reading the answers, or by one person reading the entire excerpt but making clear which portions are questions and which are answers.

As we find no error, the defendant's related claims are fruitless.  That is, because the grand jury testimony was admitted properly as substantive evidence, the defendant's argument that there was insufficient evidence to find him guilty beyond a reasonable doubt without the grand jury testimony fails.  And as we conclude that the prosecutor's method of presenting the grand jury testimony was not error, we reject the

defendant's arguments that the prosecutor committed misconduct in so doing, and that the prosecutor improperly referred to the grand jury testimony during his closing argument.

2. Supplemental jury instructions. The defendant also claims error with respect to supplemental instructions provided to the jury in response to a question the jury submitted during deliberations. The jury asked, "With respect to the charge of first-degree murder and its three elements, is it necessary that the intent to kill be specific to the named victim or is it sufficient that the intent to kill refer to anyone on the porch?" Over the defendant's objection, the judge gave the following instruction: "You may find deliberate premeditation if you find that the defendant deliberately decided to kill someone in a group regardless of whether the defendant intended to kill the actual victim, who was among the target group." The defendant argues that because there was no evidence that the individual with whom the defendant argued was on the porch (or that there was a group of people on the porch at all) at the time of the shooting, the instruction was erroneous and he is entitled to a reversal of his convictions.

The instruction that the judge gave in response to the jury's question was a correct statement of the law. See Commonwealth v. Taylor, 463 Mass. 857, 863 (2012) (where there is sufficient evidence, jury can be instructed that element of

deliberate premeditation is met if they find that defendant intended to kill someone else in same group as victim). It was also an appropriate response given the evidence presented at trial. Although there was no testimony that a group of individuals remained on the porch when the defendant returned, there is no dispute that at least one person -- the victim -- was there at the time of the shooting. The judge correctly instructed the jury that they could find deliberate premeditation if they found that the defendant intended to kill someone other than the victim. See Commonwealth v. Van Bell, 455 Mass. 408, 420 (2009), quoting Commonwealth v. Robinson, 449 Mass. 1, 7-8 (2007) (within discretion of judge to tailor supplemental jury instructions). There was no error.[5]

3. Review under G. L. c. 278, § 33E. Finally, the defendant asks us to exercise our extraordinary power to grant relief under G. L. c. 278, § 33E. We have reviewed the record

---

[5] The defendant also argues that after giving the supplemental jury instruction, the judge erred by failing to instruct the jury that all the instructions are to be considered as a whole. See Commonwealth v. Hicks, 22 Mass. App. Ct. 139, 144-145 (1986) (recommending that judges instruct that supplemental instructions are to be considered along with main charge). Such an instruction is recommended, not mandated. Neither we nor the Appeals Court have ever held that the failure to give such an instruction warrants the reversal of a conviction. See Commonwealth v. Conley, 34 Mass. App. Ct. 50, 59 (1993).

in its entirety and see no basis to set aside or reduce the verdict of murder in the first degree or to order a new trial.

Judgments affirmed.