COMMONWEALTH *vs.* HARVEY M. SANDERS.

Middlesex. February 2, 1981. — June 1, 1981.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Jury and Jurors. Practice, Criminal,* Examination of jurors.

Although interrogation of jurors as to racial prejudice is not constitution-
ally mandated in a case involving interracial rape unless the defendant
is a "special target for racial prejudice," this court held that as a matter
of law interracial rape cases present a substantial risk that extraneous
issues will influence the jury for purposes of determining the applica-
bility of G. L. c. 234, § 28, second par., and that in such cases tried
hereafter jurors are to be examined with respect to racial prejudice,
pursuant to that statute, "individually and outside the presence of
other persons about to be called as jurors or already called," if such an
interrogation is knowingly and voluntarily requested by the defend-
ant. [638-641]

INDICTMENTS found and returned in the Superior Court
Department on September 8, 1978.

The cases were tried before *Tamburello,* J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Brownlow M. Speer* for the defendant.

*Susan C. Mormino,* Assistant District Attorney, for the
Commonwealth.

BRAUCHER, J. The defendant, a black man, was con-
victed of rape, armed burglary, and other charges arising
out of the rape and stabbing of a white woman in her apart-
ment on the night of August 30, 1978. The convictions
were affirmed by the Appeals Court. 10 Mass. App. Ct.
330 (1980). We granted the defendant's application for fur-
ther appellate review to consider the application of G. L.
c. 234, § 28, to the interrogation of prospective jurors in
such cases. We affirm the convictions, but we direct that in

similar trials hereafter jurors are to be examined with re-
spect to racial prejudice, pursuant to the statute, "individu-
ally and outside the presence of other persons about to be
called as jurors or already called."

The defendant filed a motion that the judge allow counsel
to examine prospective jurors individually as to whether
each juror stood indifferent, proposing thirteen questions
and any other questions to which a juror's answer might
give rise. Two of the questions related to racial prejudice.[1]
The judge said he would give the statutory questions (G. L.
c. 234, § 28, first par.), and some of the requested ques-
tions, but would do so "en banc." He inquired why defense
counsel asked for interrogation regarding racial prejudice,
and counsel responded: "First of all, the defendant, as you
can see, is a black, and the victim is a very attractive white
girl. . . . Second, the crimes he is charged with are very
serious crimes, and one indictment involves a rape. People
have a great many feelings on the subject of, number one,
rape; and also rape of a white girl by a black man." The
judge denied the request. He gave the prospective jurors in-
structions as a group, asked the questions he had allowed,
including the general question on bias required by G. L.
c. 234, § 28, first par., and individually interrogated a
number of prospective jurors who came forward as suggest-
ed. Included in the instructions to the group was the fol-
lowing: "We want nobody on the jury who has any biases
or prejudices against black persons." Some of the individu-
al interrogations included questions on racial prejudice.

In *Commonwealth* v. *Ross*, 361 Mass. 665 (1972),
vacated, 410 U.S. 901, aff'd on rehearing, 363 Mass. 665,
cert. denied, 414 U.S. 1080 (1973) (with dissents), habeas
corpus granted sub nom. *Ross* v. *Ristaino*, 388 F. Supp. 99
(D. Mass.), aff'd, 508 F.2d 754 (1st Cir. 1974), rev'd, 424
U.S. 589 (1976), we held that the constitutional require-

---

[1] "Who in your mind is more likely to commit a violent crime such as
rape: a black man or a white man? Why?"
"What are your opinions about the character of black people?"

ment of a special inquiry of prospective jurors laid down in *Ham* v. *South Carolina*, 409 U.S. 524 (1973), was limited to cases where the defendant was a "special target for racial prejudice." 363 Mass. at 672. In other cases, questions beyond those required by G. L. c. 234, § 28, first par., were in the judge's discretion. Our view was upheld by the United States Supreme Court in *Ristaino* v. *Ross, supra,* and in the interim we denied relief to seven convicted defendants who asked us to reverse their convictions because of failure to interrogate jurors specifically about racial prejudice. *Commonwealth* v. *Lumley,* 367 Mass. 213, 220 n.6 (1975), and cases cited.

In the *Lumley* case we said that "as a practical matter, when a motion that prospective jurors be interrogated as to possible prejudice is presented, we believe the trial judge should grant that motion." *Id.* at 216. By St. 1973, c. 919, the Legislature inserted a second paragraph in G. L. c. 234, § 28, which we thought would lend encouragement to such a course in cases of doubt. See *Commonwealth* v. *Harrison,* 368 Mass. 366, 373-374 (1975). In several subsequent cases we indicated that questions directed to revealing racial bias, if required, had been sufficient. *Commonwealth* v. *Core,* 370 Mass. 369, 373-376 (1976). *Commonwealth* v. *Bailey,* 370 Mass. 388, 399-400 (1976). *Commonwealth* v. *Grace,* 370 Mass. 746, 757 (1976). *Commonwealth* v. *Walker,* 379 Mass. 297, 299-300 (1979). In a number of cases involving other types of bias, however, we upheld the judge in refusing to apply § 28, second par., as amended through St. 1975, c. 335,[2] unless there was a substantial risk that the jury

[2] "For the purpose of determining whether a juror stands indifferent in the case, if it appears that, as a result of the impact of considerations which may cause a decision or decisions to be made in whole or in part upon issues extraneous to the case, including, but not limited to, community attitudes, possible exposure to potentially prejudicial material or possible preconceived opinions toward the credibility of certain classes of persons, the juror may not stand indifferent, the court [may] *shall,* or the parties or their attorneys may, with the permission and under the direction of the court, examine the juror specifically with respect to such considerations, attitudes, exposure, opinions or any other matters which

would be influenced by extraneous issues. *Commonwealth* v. *Dickerson*, 372 Mass. 783, 792-793 (1977). *Commonwealth* v. *Horton*, 376 Mass. 380, 393-395 (1978), cert. denied sub nom. *Wideman* v. *Massachusetts*, 440 U.S. 923 (1979). *Commonwealth* v. *Campbell*, 378 Mass. 680, 695-696 (1979). *Commonwealth* v. *Shelley*, 381 Mass. 340, 351-353 (1980).

The Supreme Court of the United States has indicated that under its supervisory authority over the Federal courts it would require that questions directed to the discovery of racial prejudice be asked in some circumstances in which such an inquiry is not constitutionally mandated. *Ristaino* v. *Ross*, 424 U.S. 589, 597 n.9 (1976). Recently a plurality of the Justices of that Court indicated that Federal trial courts "must make such an inquiry when requested by a defendant accused of a violent crime and where the defendant and the victim are members of different racial or ethnic groups." *Rosales-Lopez* v. *United States*, 454 U.S. 182, 192 (1981). We have refused to impose such a requirement, and the trial judge and the Appeals Court in the present case have been faithful to our decisions. Thus there is no error.

We think, however, that our decisions have given insufficient force to § 28, second par. The United States Court of Appeals for the First Circuit has suggested that interracial rape may be "a classic catalyst of racial prejudice." See *Dukes* v. *Waitkevitch*, 536 F.2d 469, 471 (1st Cir.), cert. denied, 429 U.S. 932 (1976). Although, as that court held, interrogation of jurors as to racial prejudice is not constitutionally mandated in such a case, we think it should be held in cases tried hereafter that as a matter of law interracial rape cases present a substantial risk that extraneous issues will in-

may, as aforesaid, cause a decision or decisions to be made in whole or in part upon issues extraneous to the issues in the case. Such examination may include a brief statement of the facts of the case, to the extent the facts are appropriate and relevant to the issue of such examination, and shall be conducted individually and outside the presence of other persons about to be called as jurors or already called." The 1975 amendment changed "may" to "shall" as indicated.

fluence the jury and hence are within § 28, second par. Under the 1975 amendment this means that prospective jurors are to be interrogated individually in accordance with the statute, rather than as a group. See *Commonwealth* v. *Shelley*, 381 Mass. 340, 353 n.12 (1980).

We stand by the cautionary remarks in *Commonwealth* v. *Lumley*, 367 Mass. 213, 216-217 (1975): The motion for interrogation of prospective jurors as to racial prejudice "should come from the defendant himself. Before granting the motion, the trial judge should carefully ascertain that the defendant's decision to insist on specific questions regarding racial bias was a knowing and voluntary one, made with an understanding that such specific questions may activate latent racial bias in certain prospective jurors or may insult others without uncovering evidence of bias in hardcore bigots who refuse to acknowledge their prejudice." The judge has broad discretion as to the questions to be asked, and need not put the specific questions proposed by the defendant. *Commonwealth* v. *Walker*, 379 Mass. 297, 300 (1979), and cases cited.

The Appeals Court also rejected the defendant's claim of error in the charge to the jury on the defendant's right not to testify. On this point we have nothing to add to the opinion of the Appeals Court.

> *Judgments of the Superior Court*
> *affirmed.*