COMMONWEALTH vs. DONALD HOOPER.

No. 94-P-563.

Hampden. February 13, 1996. - May 29, 1997.

Present: BROWN, PORADA, & FLANNERY, JJ.

*Jury and Jurors. Practice, Criminal,* Examination of jurors, Instructions to jury, Voluntariness of statement, Admissions and confessions. *Evidence,* Admissions and confessions. *Insanity.*

In a criminal case involving interracial and sexual crimes of violence, the judge erred in refusing to grant the defendant's request to conduct individual voir dire of the prospective jurors: a new trial was required. [731-732]

At the trial of indictments the judge erred in failing to instruct the jury in accordance with humane practice on the voluntariness of a statement made by the defendant while hospitalized, where the defendant's verbal request for such an instruction was sufficient to preserve the issue, where voluntariness was a live issue at trial, and where it could not be said that the omission of the instruction was harmless. [732-734]

INDICTMENTS found and returned in the Superior Court Department on October 18, 1991.

The cases were tried before *Richard F. Connon,* J.

*Benjamin H. Keehn,* Committee for Public Counsel Services, for the defendant.

*Lori K. Odierna* for the Commonwealth.

FLANNERY, J. A Superior Court jury convicted the defendant, a white man in his forties, of serious crimes against two African-American little boys, aged six and four at the time.[1]

[1]There were twelve indictments. Two alleging civil rights crimes were nol prossed. The remaining indictments charged, as to each victim, kidnapping, mayhem, assault with intent to murder, assault and battery by means of a dangerous weapon, and assault with intent to rape. The defendant was convicted as charged on all of them, except those charging assault with intent to rape, as to which he was convicted of the lesser included offense of assault. The evidence depicted acts of unspeakable cruelty against the victims.

The principal issue at trial was the identity of the culprit. The defendant appeals the convictions on two grounds: (1) the trial judge's refusal to conduct an individual voir dire of prospective jurors concerning possible racial bias, and (2) the judge's failure to instruct the jury concerning the voluntariness of a statement by the defendant. We reverse.

This case involves interracial and sexual crimes of violence. It is undisputed that the defendant timely moved for individual voir dire of prospective jurors pursuant to G. L. c. 234, § 28. See Mass.R.Crim.P. 20(b)(2), 378 Mass. 890 (1979). The judge denied the motion, explaining that the purpose of such a voir dire would be to protect a defendant against racial or ethnic bias, and unless the venire were "totally black" or "more than twenty percent who are African-Americans," there would be no need for such a safeguard because "it hasn't been established . . . that whites are prejudiced against whites because they're white."[2]

We think the judge read the teaching of the relevant cases too narrowly. See *Commonwealth* v. *Sanders*, 383 Mass. 637, 640-641 (1981); *Commonwealth* v. *Hobbs*, 385 Mass. 863, 873 (1982); *Commonwealth* v. *Young*, 401 Mass. 390, 398 (1987); *Commonwealth* v. *Stephens*, 15 Mass. App. Ct. 461, 463 (1983). The rule we derive from those cases is that, while the decision to conduct an individual voir dire is generally discretionary with the trial judge, it is mandated — upon an informed request by the defendant — in certain cases. *Commonwealth* v. *Sanders* involved interracial rape; *Commonwealth* v. *Hobbs* involved a sexual crime against a white child by a black defendant; *Commonwealth* v. *Young* involved interracial murder; and *Commonwealth* v. *Stephens* involved repeated interracial — intersexual violence.[3] It is the combination of race, sex, and violence that, as a supervisory matter, circumscribes trial court discretion.

Each of the aforementioned cases involved white victims

---

[2]The judge later said to the venire, before empanelment began: "Now the victims in this case are African-Americans and the defendant in this case is white. Is there anything about that situation that could affect your judgment or your impartiality about this case?" No one asked to be excused on that basis. The record does not tell the race of either the trial jurors or the persons challenged or otherwise excused.

[3]An individual voir dire is not required in all interracial criminal cases. See *Commonwealth* v. *Grice*, 410 Mass. 586 (1991) (armed robbery).

and nonwhite defendants, and that circumstance may have been a factor in the judge's exercise of his discretion against the motion. However, his stated assumption about the nature of prejudice is inconsistent with the language in *Commonwealth* v. *Young*, 401 Mass. at 398, which is neutrally biracial ("a defendant and a victim of different races"). Moreover, in *Commonwealth* v. *Lawrence*, 404 Mass. 378 (1989), a case decided well before the trial of the present one, the Supreme Judicial Court refused to require an individual voir dire on the ground that the decision in *Commonwealth* v. *Young*, *supra*, was prospective only, 404 Mass. at 388, not on the available ground that the victim was black and the defendant was white. To be sure, both *Young* and *Lawrence* were murder cases and the present one is not. That difference may be an aggravating circumstance, but it does not distinguish the principle we apply. The principal cases preceding *Young* and *Lawrence*, i.e., *Sanders*, *Hobbs* and *Stephens*, involved race, sex, and violence, but not murder.

In the trial judge's view, with a white defendant and a jury eighty percent or more white, the risk of racial prejudice as an extraneous issue was negligible. We disagree in two respects. Racial prejudice is irrational by its nature; so reliable predictions about its manifestations can not be made. Second, if the judge was correct in his assumption that white jurors are unlikely to disfavor a white defendant, then the risk of racial bias disfavoring the Commonwealth is palpable.

The judge's analysis stopped short of the correct principle, we believe. The proper objective is the elimination of racial bias as a decisional factor from the trial. Cf. *Powers* v. *Ohio*, 499 U.S. 400, 415 (1991): "The Fourteenth Amendment's mandate that race discrimination be eliminated from all official acts and proceedings of the State is most compelling in the judicial system." In interracial cases, at least ones involving some combination of sex, violence, and children, race is an unavoidable extraneous issue. General Laws c. 234, § 28, posits, and so must we, that an individual voir dire is more conducive to juror candor in that matter than is a general question to the venire. Therefore, upon motion by the defendant, who must be cautioned about the risk of arousing latent prejudices, it is required.

The defendant also contends that the judge's failure to instruct the jury concerning the voluntariness of statements

that he made, i.e., the failure to give a "humane practice" instruction, was reversible error. Two days after the crime, when the defendant was at a hospital, where he was intubated and restrained, he said several times to an orderly, who was taking him to his room, "I know you're taking me to jail," or words to that effect. On appeal, the defendant calls that statement "inculpatory," and he urges that the judge should have instructed the jury that they could not consider the statement unless the Commonwealth proved beyond a reasonable doubt that it was the voluntary product of a rational intellect. The Commonwealth argues as follows that there was no error or that it was harmless: the defense did not request the instruction or object to its omission; voluntariness was not a live issue at trial; the omission was harmless because the defendant did not claim mental incapacity and because there was overwhelming evidence of guilt.

*Commonwealth* v. *Benoit*, 410 Mass. 506, 511 (1991), and related cases teach that a confession or admission, in order to be considered by the jury, must be voluntary and the product of a rational intellect. If either voluntariness or the declarant's mental state is in question, the Commonwealth must prove the elements of admissibility beyond a reasonable doubt, first to a judge on voir dire, as was done here, and second — if the issue is a live one at trial — to the jury. If the Commonwealth does not sustain its burden, the statement must be excluded by the judge. If the statement is admitted in evidence, the jury may consider it only if they too find that the Commonwealth has met its burden. The statement to the orderly was admitted, but the jury were uninstructed concerning their independent threshold appraisal of it. See *Commonwealth* v. *Berg*, 37 Mass. App. Ct. 200, 203 (1994).

First, we reject the Commonwealth's contention that the defendant did not request such an instruction. At a charge conference, the prosecution asked for a consciousness of guilt instruction with respect to the statement. The judge said he was "inclined" to give it. He said to the defense: "What about the confession or the statement? It's not a confession." The answer was: "I believe there would need to be an instruction in terms of Humane Practice." It is true that the request was

not made in writing,[4] nor was the omission objected to before the jury retired to deliberate. However, counsel's request sufficed to preserve the issue, see *Commonwealth* v. *Grenier*, 415 Mass. 680, 686 n.8 (1993), particularly an issue as to which the court bears a continuing sua sponte responsibility, provided that it is a live one.

Contrary to the Commonwealth's assertion, the issue was a live one at trial. The hospital orderly was questioned about the defendant's medical and mental condition when he made the statement; in his summation defense counsel urged the jury to disregard the statement in light of the defendant's impaired state; and the judge referred specifically to the statement in his jury instruction concerning consciousness of guilt. Moreover, the issue was important as well as alive. The defense was one of mistaken identity. An inculpatory statement, if it is credited by the jury, is harmful to such a defense.

The Commonwealth argues that the omission was harmless because the defense was not one of diminished mental capacity and because the evidence of the defendant's guilt was overwhelming. A defense of lack of responsibility is not a necessary predicate for a "humane practice" instruction. Finally, we cannot say with any degree of assurance that the omission of such an instruction was harmless.

The judgments of conviction are reversed, the verdicts are set aside, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

[4]The judge remarked on that omission, but the record does not show that he denied the request for that reason.