COMMONWEALTH *vs.* ANTHONY HOLLOWAY.

No. 96-P-1429.

Plymouth. December 16, 1997. - March 20, 1998.

Present: LAURENCE, KAPLAN, & LENK, JJ.

*Jury and Jurors. Practice, Criminal,* Voir dire, Examination of jurors. *Rape. Evidence,* Prior misconduct, Relevancy and materiality, Pattern of conduct, Motive.

Discussion of G. L. c. 234, § 28, and related cases, concerning the discretion of a trial judge in a criminal case to question prospective jurors individually when it appears that their impartiality may be affected by extraneous issues. [472-473]

At the trial of an indictment for statutory rape, the judge erred in failing to conduct an individual voir dire of prospective jurors on the issue of sexual assault, as requested by the defendant; where the trial was essentially a credibility contest between the minor complainant and the adult defendant, the error warranted reversal of the defendant's conviction and the grant of a new trial. [473-474]

At the trial of an indictment for statutory rape, the judge did not abuse his discretion in admitting in evidence certain prior bad acts of the defendant, where such evidence was relevant to show the defendant's pattern of conduct and motive, and where the judge properly determined that the probative value of such evidence outweighed the risk of prejudice to the defendant. [474-477]

INDICTMENT found and returned in the Superior Court Department on February 15, 1994.

The case was tried before *Patrick F. Brady,* J.

*Robert J. Wheeler, Jr.,* for the defendant.

*Robert C. Thompson,* Assistant District Attorney, for the Commonwealth.

LENK, J. This appeal arises from the defendant's February 22, 1996, conviction, by a Superior Court jury, of rape of a child under sixteen years of age, in violation of G. L. c. 265, § 23. On appeal, the defendant makes two claims of error. The defendant contends that the trial judge erred in (1) denying his

Commonwealth *v.* Holloway.

request for an individual voir dire of the prospective jurors on the issue of whether any juror, family member, or friend had been the victim of sexual abuse; and (2) admitting, over objection, evidence of two prior bad acts. Because of the failure to conduct the requisite voir dire examination, we reverse. We also treat the evidentiary issue as it may arise on retrial.

The jury would have been warranted in finding the following facts. The defendant, Anthony Holloway, is a karate champion and professional karate trainer. He was the complainant's karate instructor from September of 1988 through August of 1993. The complainant began taking lessons from the defendant when she was eleven years old and continued through age sixteen. The complainant became nationally ranked in karate and was twice ranked number one in the country for her age group. Over the years, the defendant developed a close friendship with the complainant and her family.

When the complainant began studying with the defendant, she attended one-hour classes three times a week which, within a year or two, increased to five or six sessions a week, each of two to four hours duration. In addition, the complainant traveled frequently with the defendant, locally and out-of-state, to attend karate competitions. When the defendant began taking the complainant out socially, however, the complainant's mother asked him not to do so. In July of 1991, when the complainant's mother traveled to Ohio to watch her daughter compete in the Junior Olympics, she observed her daughter lying in bed "in a coupled position" with the defendant and heard the defendant addressing her daughter as "baby, honey, [and] sweetie." At this point, the complainant's mother informed the defendant that he was only to be in her daughter's presence during karate lessons.

At trial, the complainant testified that in April, 1989, when she was twelve years old and the defendant was twenty-two years old, the defendant asked her to accompany him to Wareham to pick up uniforms. Along the way, the defendant asked her about her virginity. The next day, when the complainant was alone with the defendant at the karate school, the defendant asked her for a massage and then asked if he could kiss her. After initially refusing, the complainant acquiesced to the defendant's requests. The next night, while the defendant was driving the complainant home from dinner, he stopped at a conservation area and had sexual intercourse with her. The

complainant testified that that year she had intercourse with the defendant six or seven times. In the following years, the frequency of sex increased to "like every day" until the relationship ended in July or August of 1993 when the complainant was sixteen and one-half years old.

Over the defendant's objections, in addition to testifying to other specific sexual encounters, the complainant testified that the defendant had shown her pornographic films and had purchased alcohol for her consumption on several occasions.

The defendant testified, denying that he had ever engaged in any sexual activity with the complainant.[1] The defendant's testimony otherwise corroborated that of the complainant with respect to the extent of their contact, travel together, and social outings. The defendant presented four other witnesses, all of whom testified that they had observed the defendant and the complainant together on many occasions and had never witnessed any inappropriate sexual behavior. Several of the defense witnesses also testified that they had observed the complainant demonstrating significant hostility towards Michelle Daley, a woman whom the defendant began dating in 1991 and subsequently married.

1. *Jury voir dire.* The defendant contends that the trial judge erred in declining to conduct an individual voir dire of prospective jurors to ascertain whether any juror or family member had been the victim of sexual assault. The defendant asserts that such inquiry is mandatory in cases involving sexual offenses against minors and that the judge's refusal to so inquire in this case constitutes reversible error. We agree.

Prior to trial, the defendant submitted a number of proposed questions for the prospective jurors and requested an individual voir dire of the jurors. The defendant requested that the trial judge ask each juror individually, "Have you or any members of your family or a close personal friend been the victim of any type of sexual assault?" The judge declined to make this inquiry, and defense counsel noted his objection.

Because of the difference in the defendant's and complainant's races, however, the judge did conduct an individual voir dire to ferret out racial bias as required by *Commonwealth* v. *Sanders,*

---

[1]The defendant similarly denied stopping at a liquor store with the complainant before taking her to a hotel on the night of September 26, 1992. The defendant was not, however, asked if he had ever bought alcohol on the complainant's behalf or had ever shown her pornographic movies.

383 Mass. 637, 640-641 (1981) (on request, in cases involving interracial rape, individual questioning regarding racial bias is required).[2] In the course of this, he indicated that "the case involves a charge of an alleged statutory rape." In response to this information, two of the first three jurors volunteered personal information relating to members of their family who had been victims of sexual assault. At this point, the defendant renewed his request for individual questioning on the issue of sexual assault, and the judge again refused his request.

"Article 12 of the Massachusetts Declaration of Rights and the Sixth Amendment to the United States Constitution . . . guarantee to the criminally accused the right to a trial by an impartial jury." Commonwealth v. Susi, 394 Mass. 784, 786 (1985). To that end, G. L. c. 234, § 28, requires the judge to question prospective jurors individually when it appears that their impartiality may be affected by extraneous issues. Commonwealth v. Grice, 410 Mass. 586, 588 (1991). It is generally within the judge's discretion, however, to determine when there exists a substantial risk that extraneous issues would influence the jury such that an individual voir dire of potential jurors is warranted. Ibid. Nonetheless, this discretion has been limited by the Supreme Judicial Court through its power of general superintendence, primarily in the area of racial prejudice. Commonwealth v. Hobbs, 385 Mass. 863, 873 (1982). "[W]hile the decision to conduct an individual voir dire is generally discretionary with the trial judge, it is mandated — upon an informed request by the defendant — in certain cases." Commonwealth v. Hooper, 42 Mass. App. Ct. 730, 731 (1997). "It is the combination of race, sex, and violence that, as a supervisory matter, circumscribes trial court discretion." Ibid.

The court has also invoked its power of general superintendence in a nonracial bias context in Commonwealth v. Flebotte, 417 Mass. 348, 355 (1994), by circumscribing a trial judge's discretion in cases involving sexual offenses against minors. A trial judge is now required, on request, to question each potential juror individually in cases involving sexual offenses against minors as to whether the juror has been a victim of a childhood sexual offense. Ibid.

_____

[2]The requirement set forth in Sanders that judges hold individual colloquies with defendants as to whether individual juror questioning regarding racial prejudice should take place is no longer in effect. See Commonwealth v. Ramirez, 407 Mass. 553, 554-557 (1990).

As we have noted, in establishing these rules, the Supreme Judicial Court relied upon its superintendency powers to implement the policy set forth in G. L. c. 234, § 28, and not upon constitutional considerations. See *Commonwealth* v. *Sanders*, 383 Mass. at 640; *Commonwealth* v. *Hobbs*, 385 Mass. 863, 873 (1982); *Commonwealth* v. *Young*, 401 Mass. 390, 398 (1987); *Commonwealth* v. *Flebotte*, 417 Mass. at 355; *Commonwealth* v. *Stephens*, 15 Mass. App. Ct. 461, 465 (1983). The failure to comply with this requirement is thus ordinarily not grounds for reversal unless the defendant can demonstrate resulting prejudice. *Commonwealth* v. *A Juvenile (No. 2)*, 396 Mass. 215, 224 (1985).[3] Otherwise put, if the judge erroneously fails to conduct an individual voir dire and make the relevant inquiry, the case will be reversed only if the defendant can show that the error possibly weakened his case in some significant way. *Ibid.* See *Commonwealth* v. *Otsuki*, 411 Mass. 218, 229 (1991).

On the record before us, it is clear that the trial judge erred in failing to satisfy the unequivocal requirement of *Flebotte* to examine each juror individually on the issue of sexual assault as requested by the defendant. Because this ruling does not violate a constitutional mandate, we must now consider whether the error affected the substantial rights of the defendant. *Commonwealth* v. *A Juvenile (No. 2)*, 396 Mass. at 224.

The Supreme Judicial Court has explicitly recognized the need for a safeguard in cases involving sexual assault of minors because of the reasonable possibility that prejudice would influence the jury. *Commonwealth* v. *Flebotte*, 417 Mass. at 355. The Commonwealth's contention that the individual voir dire which the judge did conduct was adequate to address the concerns raised in *Flebotte, supra*, is unpersuasive. The judge made clear in his inquiry that he was primarily concerned with the possibility of racial prejudice.[4] The fact that several of the jurors came forth with personal information about family members who had been victims of sexual assault, while perhaps serendipitous, does not convince us that the judge's inquiry

---

[3] See note 2, *supra*.

[4] The judge's inquiry of each juror was as follows: "This case, as I indicated out in open court, involves a charge of an alleged statutory rape by a black defendant, Mr. Holloway, against a white person . . . who allegedly, was less then 16-years-old when the offenses allegedly occurred. Do you have any feelings about black or white people that might affect your judgment in this case?"

adequately encouraged disclosure about "such a private and highly emotional event." *Id.* at 355. Prospective jurors "may be embarrassed" about the subject, "they may feel it would not affect their objectivity, or they may just not want to discuss it." *Ibid.*

Except where it has not been clear that issues subject to individual voir dire are involved, *Commonwealth* v. *Otsuki*, 411 Mass. 218, 226 (1991) (judge was unaware that defendant was Japanese or that the defendant was concerned that he would be the object of racial prejudice), or where overwhelming evidence of guilt was presented, *Commonwealth* v. *A Juvenile (No. 2)*, 396 Mass. at 225, the court has assumed that prejudice may exist from the failure to conduct the requested examination. In addition, we note that the purpose of a supervisory rule is to aid in "sound judicial administration." *Commonwealth* v. *Pavao*, 423 Mass. 798, 800 (1996). Thus, the intent of such rules is to foreclose the need for a post hoc case-by-case analysis of whether, absent compliance with the rule, what transpired will suffice. *Id.* at 802 (purpose of supervisory rule requiring colloquy prior to jury trial waiver is to establish bright line rule to preclude post hoc inquiry into whether defendant's waiver of a jury trial was knowing and voluntary).

Here, the Commonwealth proceeded on a theory of statutory rape, and the trial was essentially a credibility contest between the minor complainant and the adult defendant. Contrast *Commonwealth* v. *A Juvenile (No. 2)*, 396 Mass. at 225 (failure to conduct requisite colloquy, required at that time, not prejudicial where case was not one in which conflicting evidence rendered the outcome of jury deliberations uncertain). The individual voir dire conducted by the judge directed the jurors to address the issue of racial bias, not of sexual assaults on minors. Given these circumstances, the defendant has met his burden of showing that the judge's failure to conduct the requested inquiry possibly weakened his case in some significant way. *Id.* at 224. See *Otsuki*, 411 Mass. at 229. We conclude that the failure to conduct the individual voir dire inquiry requested requires that the defendant's conviction be reversed. See *Commonwealth* v. *Washington*, 402 Mass. 769, 774 (1988) (where trial was a contest of credibility between the defendant's witnesses and the victim's, the failure to conduct the requisite colloquy, in effect at that time, requires a new trial).

2. *Prior bad acts evidence.* During the direct examination of

the complaining witness, the government elicited evidence that the defendant had purchased alcohol for the complainant and had shown her pornographic movies on a number of occasions. The defendant, however, was not charged with any offense involving these acts. The defendant objected to the admission of this evidence at trial and now contends that its admission constituted an abuse of discretion and requires reversal of his conviction.

It is well settled that the prosecution may not introduce evidence that a defendant previously has misbehaved, indictably or not, for the purpose of showing bad character or propensity to commit the crime charged. *Commonwealth* v. *Helfant*, 398 Mass. 214, 224 (1986). It is also well established, however, that the rule does not render inadmissible such evidence if relevant for other purposes. Thus, evidence of uncharged bad acts may be admitted to show, for example, common plan, pattern of conduct, identity, absence of accident, or motive. *Ibid.* See *Commonwealth* v. *King*, 387 Mass. 464, 472 (1982); *Commonwealth* v. *Kelleher*, 42 Mass. App. Ct. 911, 912 (1997); *Commonwealth* v. *Chartier*, 43 Mass. App. Ct. 758, 760-761 (1997). See also Liacos, Massachusetts Evidence § 4.4.7 (6th ed. 1994). Where evidence of other crimes, wrongs, or acts is relevant for one of these purposes, the evidence may be admitted if its probative value is not substantially outweighed by any prejudice. Liacos, Massachusetts Evidence § 4.4.6 (6th ed. 1994). Nonetheless, as with all evidence, in order to be admissible the evidence must be relevant to the offense charged. *Commonwealth* v. *Helfant*, 398 Mass. at 225.

At trial, the complainant testified that the defendant showed her pornographic movies in his room behind the karate studio "all the time," and that "either during them we'd fool around or he just wanted me to watch them." When a defendant is charged with a sexual assault, evidence of similar crimes against the same victim "if not too remote in time, is competent to prove an inclination to commit the [acts] charged in the indictment . . . and is relevant to show the probable existence of the same passion or emotion at the time in issue." *Commonwealth* v. *Johnson*, 35 Mass. App. Ct. 211, 217 (1993), quoting from *Commonwealth* v. *Bemis*, 242 Mass. 582, 585 (1922). "Evidence of similar misconduct may also be used to show the relationship between the defendant and the [complainant]." *Commonwealth* v. *Barrett*, 418 Mass. 788, 794 (1994). See *Commonwealth* v.

*McCleod*, 39 Mass. App. Ct. 461, 464 (1995). Thus, the complainant's testimony that the defendant had shown her pornographic videos on several occasions was admissible as evidence of a pattern or course of conduct engaged in by the defendant to exploit the complainant's trust, and also as evidence of the defendant's motive or intent to engage the complainant in a sexual relationship. See *Commonwealth* v. *Lanning*, 32 Mass. App. Ct. 279, 282-283 (1992).

If the judge finds that the evidence in question is admissible, he or she next must determine whether its probative value is outweighed by a risk of undue prejudice to the defendant. *Commonwealth* v. *Helfant*, 398 Mass. at 225. From the trial transcript, it is clear that the judge properly conducted this analysis at sidebar.[5] There was no error.

The complainant also testified that the defendant bought alcohol for her consumption. In particular, the complainant testified that on September 26, 1992, when the defendant was driving her home from a karate competition in Boston, he brought her first to Braintree where they stopped at a liquor store and then went to a hotel. The complainant testified that the defendant purchased wine coolers and Heineken beer at the liquor store and then took her to a Motel 6 to have sex.

The "prosecution [is] entitled to present as full a picture as possible of the events surrounding the incident[s]" at issue. *Commonwealth* v. *Sevieri*, 21 Mass. App. Ct. 745, 756 (1986). The jury could reasonably infer from the complainant's testimony that the defendant purchased alcohol on her behalf in order to enhance her sexual desire or reduce her resistance to sexual advances. See *Commonwealth* v. *Almeida*, 42 Mass. App. Ct. 607, 616 (1997) (evidence that defendant provided drugs and alcohol to the complainant helped the jury to understand how the defendant controlled his relationship with the complainant). Moreover, although prior bad acts cannot be considered as the basis for a guilty verdict, a jury may consider evidence of prior wrongs as probative of a defendant's state of mind or intent. *Commonwealth* v. *Sevieri*, 21 Mass. App. Ct. at 756

---

[5]The judge held a sidebar conference to determine the admissibility of this testimony. During this conference, the judge remarked, "I don't know whether or not the prejudice outweighs any potentially probative value." Moments later, however, the judge concurred with the Commonwealth that the testimony should be admitted and remarked, "And I think you're right. I will overrule [defense counsel's] objection."

(suggestive behavior prior to alleged rape probative of defendant's state of mind). It was not error for the trial judge to admit this evidence at trial.

*Judgment reversed.*